United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 8, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 01-41437

BILLY FRANK VICKERS,

Petitioner-Appellant,

versus

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

--------------------
Appeal from the United States District Court
for the Eastern District of Texas
(6:98-CV-643)
--------------------

Before HIGGINBOTHAM, WIENER, AND BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Petitioner Billy Frank Vickers, Texas Prisoner #99087, seeks a Certificate of Appealability (COA) from this court following the district court's refusal to grant his application for COA and its denial of habeas relief pursuant to 28 U.S.C. § 2254. For reasons we explain below, we deny COA.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I

## FACTS AND PROCEEDINGS

Vickers was charged by indictment under TEX. PENAL CODE ANN. § 19.03(a)(2), which states that a person commits capital murder if he commits murder during the commission of another felony – in this case, the aggravated robbery of Phillip Kinslow. At the guilt/innocence phase, the jury found Vickers guilty as charged. At the sentencing phase, the jury answered the two special issues in the affirmative: There was a probability that Vickers would constitute a continuing threat to society; and Vickers caused Kinslow's death, intended to kill Kinslow, or anticipated the loss of a human life. As the jury did not find sufficient mitigating circumstances to warrant a sentence of life imprisonment, the trial court imposed a sentence of death.

On direct appeal, Vickers raised 56 points of error. The Texas Court of Criminal Appeals affirmed his conviction and sentence, and the United States Supreme Court denied certiorari. Vickers v. Texas, 522 U.S. 913 (1997).

Vickers then filed two state postconviction applications. The first raised issues not relevant to this federal petition and was denied without written order. In his second state application, Vickers asserted, in relevant part, that the evidence was insufficient to establish that he shot Kinslow, acted with the intent to cause death, or had sufficient culpability to support the

aggravating factor at the sentencing phase; and that the trial court improperly instructed the jury on the law of conspiracy, thereby allowing the jury to find Vickers guilty of capital murder without the requisite intent to kill. The Texas Court of Criminal Appeals dismissed this second application as abuse of the writ, pursuant to TEX. CRIM. P. CODE ANN. art. 11.071 § 5(a).

Vickers filed his federal habeas petition pursuant to 28 U.S.C. § 2254, asserting that (1) the evidence was insufficient to establish that he shot Kinslow or that the shooter acted with the intent to cause death; (2) the lack of evidence of intent rendered the death sentence unconstitutional; (3) the jury instructions on conspiracy allowed Vickers to be sentenced to death under a lower standard than that required by the Supreme Court; (4) the jury instructions on conspiracy denied Vickers the right to know the nature of the charge against him; and (5) appellate counsel rendered ineffective assistance by not raising these issues on direct appeal. The district court denied habeas relief and granted the respondent's motion for summary judgment. The court concluded that Vickers had procedurally defaulted his challenges to the sufficiency of the evidence to show his intent to kill or the "highly culpable mental state" needed to impose the death penalty. The district court elected to address the merits of Vickers's challenge to the sufficiency of the evidence to establish that he was shooter, because the relevant facts had been raised by Vickers on direct appeal in conjunction with a sentencing issue. Without

3

applying the deferential standards of § 2254(d), the district court held that the evidence was sufficient to establish that Vickers had in fact shot Kinslow.  The court concluded that Vickers's challenge to the jury instructions and to the assistance of appellate counsel were also procedurally defaulted.  Finally, the court held that any ineffective assistance of appellate counsel did not establish cause for the procedural default of the other claims.

Vickers filed a timely motion to alter or amend the judgment pursuant to FED. R. CIV. P. 59(e).  Id. at 112-41; FED. R. CIV. P. 6(a).  The district court denied the motion, concluding that the Texas Court of Criminal Appeals regularly applies the abuse-of-the-writ doctrine, that Vickers could not establish cause through the ineffectiveness of appellate counsel, and that he had not shown that he was "actually innocent" of conduct giving rise to the death penalty.  Vickers filed a timely notice of appeal and a request for a COA, after which the district court denied COA.

**II**

**ANALYSIS**

A.  Applicable Law

Vickers's § 2254 petition was filed in July 1999, and is therefore subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  See Penry v. Johnson, 532 U.S. 782, 792 (2001).  Under the AEDPA, Vickers must obtain a COA before he can

4

appeal the district court's denial of habeas relief.  28 U.S.C. § 2253(c)(1); <u>Slack v. McDaniel</u>, 529 U.S. 473, 478 (2000).

To obtain a COA for any of his claims, Vickers must make a "substantial showing of the denial of a constitutional right." § 2253©(2); <u>Slack</u>, 529 U.S. at 483.  When a district court has rejected a constitutional claim on the merits, a COA will be granted only if the petitioner "demonstrate[s] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack</u>, 529 U.S. at 484; <u>see</u> <u>also</u> <u>Miller-el v. Cockrell</u>, 123 S. Ct. 1029, 1039-40 (2003). If the denial of relief is based on procedural grounds, the applicant must show that (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.  Each prong of the test is part of a threshold inquiry, and a court may dispose of the application by resolving the issue with the answer that is more apparent from the record and arguments.  <u>Id.</u> at 485.

B.    Sufficiency of the Evidence – Vickers as Shooter

Vickers contends that the evidence was insufficient to support a finding that he shot Kinslow.  The standard for testing the sufficiency of the evidence in federal habeas review of a state court conviction "is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979)(emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." See id. at 324 n.16. Under Texas law, an individual commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1). The individual commits capital murder if he commits murder as defined under § 19.02(b)(1) and another aggravating factor is present, such as the defendant's intentional commission of the murder during the course of another felony. § 19.03(a)(2).[1]

At Vickers's trial, Jason Martin testified that he, Vickers, and Tommy Perkins planned to rob the Arthur City Superette, which was run by Kinslow. On the day of the murder, the three men met at Vickers's home. Perkins had a .38 caliber handgun and Vickers had a .22 caliber handgun. The threesome spent the day drinking, "casing" Kinslow's home and the Superette, and following Kinslow about his daily activities. Perkins and Vickers decided that if Kinslow left his vehicle to open or close one of the gates around his home, they would rush him, bind him with duct tape, take his money, and steal his pickup. The three men left Vickers's home in possession of duct tape, a police scanner, and ski masks.

[1] The State asserts that, contrary to the district court's findings, this issue was procedurally defaulted. We will not address this assertion, as Vickers's argument fails on the merits. See Slack, 529 U.S. at 485.

6

On the way to the Kinslow residence, Vickers put the .22 caliber handgun on the dashboard of the truck. Martin let Perkins and Vickers out of the truck; Vickers was carrying the duct tape and the .22 caliber handgun. Martin, the getaway driver, was aware that if Kinslow resisted, he would suffer physical force or injury. Martin drove around for a short while, then went to the agreed meeting point. After Martin turned off the engine of his truck, he heard a gunshot and Vickers yelling. Martin then the scene, learning later that Kinslow had been shot and killed. Martin then went home and passed out.

The next morning, Perkins came to Martin's residence where he told Martin that Vickers had been shot in the knee. Perkins related that he and Vickers had waited by the gate and that, as Kinslow got out of his truck, Perkins saw that Kinslow had a gun. Vickers rushed Kinslow, a struggle ensued, and gunshots were fired. After the shooting, Kinslow got back in his truck and drove down the driveway.

A medical examiner had previously testified that Kinslow had a gunshot wound in his chest and that the bullet had gone through his right lung and into his spinal column, causing death. The bullet recovered from Kinslow's spinal column was a .22 caliber.

Latricia Dangerfield testified that she was Perkins's girlfriend. She recounted that, in the early morning after the murder, Perkins told her that "Sonny [Vickers] had got hurt, and they went out to rob this guy and it didn't go the way it was

7

supposed to." Dangerfield admitted that Perkins had told her that he had seen that the victim had a gun when he went to open the gate. Perkins also told Dangerfield that Vickers asked Kinslow if he wanted to die and Kinslow asked Vickers the same question, whereupon both started shooting; that Kinslow jumped in his truck and drove away; and that Vickers and Perkins ran away from the scene. Dangerfield was also told by Perkins that he had been asked by Vickers why he (Perkins) had not shot his gun, stating that he (Vickers) had not heard any shots from Perkins. Finally, Perkins told Dangerfield that he had not shot Kinslow.

Vickers acknowledges that both Martin and Dangerfield testified that Perkins told them that it was Vickers, not Perkins, who had fired the shots that struck Kinslow. Vickers maintains, however that this "circumstantial" evidence is countered by other circumstantial evidence showing that he was not in fact the shooter. He contends that because the evidence gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, a reasonable jury must necessarily entertain a reasonable doubt. Clark v. Procunier, 755 F.2d 394, 396 (5th Cir. 1985).

This contention is without merit. Both Martin and Dangerfield testified as to what they were told by an eyewitness to the shooting; such testimony is direct evidence of Vickers's guilt. [2]

---

[2] A painstaking review of the record, both pre-trial and trial, reveals no motions in limine, contemporaneous objections, or

8

Even if the testimony were circumstantial, however, Vickers still is not entitled to relief. When Martin's and Dangerfield's testimony is viewed in the light most favorable to the prosecution, it unequivocally establishes that Vickers did the shooting. Furthermore, the evidence established that the fatal bullet was a .22 caliber, copper-coated, hollow-point long rifle like those found at Vicker's home, and that the bullet had been fired from a .22 caliber handgun, the kind of gun that was in Vickers's possession at the time he left Martin's truck. A reasonable juror could also infer that Kinslow shot at Vickers to defend himself because Vickers was shooting at him.

Vickers also asserts that the only testimony establishing that he was the shooter is that of his accomplice, Perkins, and that under state law, accomplice testimony must be corroborated. There is, however, no constitutional requirement that the testimony of an accomplice-witness be corroborated. See Brown v. Collins, 937 F.2d 175, 182 n.12 (5th Cir. 1991). As Vickers is challenging the sufficiency of the evidence on a matter of Texas law, his claim is not cognizable in a federal habeas proceeding. See Smith v. Phillips, 455 U.S. 209, 221 (1982).

Vickers has not established that "reasonable jurists would find the district court's assessment of the [sufficiency claim]

---

other opposition by Vickers to the admission of this testimony, whether as hearsay or otherwise.

debatable or wrong." Slack, 529 U.S. at 484. He is not entitled to a COA on this claim.

C. Ineffective Assistance of Appellate Counsel

Vickers contends that the district court erred in not reviewing the merits of his ineffective-assistance claim. The district court concluded that this claim was procedurally defaulted because Vickers had never presented it to the state courts. Under the procedural-default doctrine, when the last state court that rendered a reasoned judgment in a case explicitly rejected a claim based on an independent and adequate state-law procedural ground, federal courts are ordinarily precluded from granting habeas relief grounded on that claim. See Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). If the petitioner failed to exhaust state remedies and the court to which he would be required to present his claims to meet the exhaustion requirement would find the claims procedurally barred, then there is a procedural default for the purpose of federal habeas consideration. See Emery v. Johnson, 139 F.3d 191, 195 (5th Cir. 1997). If the claims are found to be procedurally defaulted, the petitioner must establish both cause and prejudice for the procedural default or show that the failure to hear the claim would result in a complete miscarriage of justice. Wainwright v. Sykes, 433 U.S. 72, 87, 91 (1977).

Vickers does not dispute that he failed to present his claim in the state courts. Instead he states that such a claim would have been futile; that if he had raised the claim in his second

10

state postconviction application, it would have been dismissed for abuse of the writ. Neither does Vickers attempt to show cause and prejudice for his failure to raise the issue properly in the state court; rather, he insists that the sufficiency and jury-instruction issues, which appellate counsel failed to raise, were meritorious and could have resulted in an acquittal. Vickers reasons that by showing that he might have been acquitted, he has established a fundamental miscarriage of justice, thereby excusing his failure to raise the ineffective-assistance claim in the state courts.

Vickers's contention on this point is without merit as well. To establish a miscarriage of justice, Vickers must show that he is actually, rather than legally, innocent of the charges brought against him. See Sawyer v. Whitley, 505 U.S. 333, 339-40 (1992). As we have already explained, the evidence was sufficient for the jury to find that Vickers personally shot and killed Kinslow in the course of an armed robbery. This prevents Vickers from establishing that he was actually innocent of the capital murder. He has not shown that reasonable jurists would find it debatable that the district court erred in refusing to consider the merits of this procedurally defaulted claim.

D.   Jury Instruction; Sufficiency and Procedural Default

Vickers also insists that because the indictment did not allege that he had participated in a conspiracy, the trial court erred when it charged the jury with the law on a "party conspirator." He maintains that as a result, the jury was allowed

11

to sentence him to death merely for his participation in a felony and his "anticipation" of a murder, rather than based on his own intent to kill.  He also contends that he was denied notice of the charges against him as is required by the Sixth Amendment.[3]

Vickers also advances that the evidence was insufficient to establish his intent to kill.  He grounds this contention in the claim that the only evidence of intent came through the hearsay testimony of Martin and Dangerfield regarding what Perkins, an accomplice, had told them and that this evidence was not corroborated.

Vickers concedes that he raised these claims for the first time in his second state application.  He contends, however, that the district court improperly refused to consider the merits of his claims under the procedural default doctrine, arguing that appellate counsel's ineffectiveness establishes cause for his failure to raise the claims in a timely manner.  He also argues that, because he could have been acquitted on these grounds, he has established a fundamental miscarriage of justice.

The state court dismissed Vicker's second state application, which included these claims, for abuse of the writ.  To qualify as adequate, a procedural rule must be applied strictly or regularly

---

[3]    The State asserts that Vickers's challenge to the jury charge was also procedurally defaulted under the contemporaneous objection rule and that his assertions that failure to consider the procedurally defaulted claims would constitute a miscarriage of justice were untimely in the district court.  As these claims of Vickers are wholly unavailing, we shall not address them.

12

to the vast majority of similar claims.  See Emery, 139 F.3d at 195.   The law is well-settled that a dismissal of a state application pursuant to art. 11.071 § 5(a) is an independent and adequate ground regularly invoked by Texas courts.  See Emery, 139 F.3d at 195-96.

Vickers contends that he has established "cause" for his procedural default in appellate counsel's failure to raise the issues on direct appeal.   Although ineffective assistance may constitute "cause" for a procedural default, Murray v. Carrier, 477 U.S. 478, 488 (1986), such an ineffective-assistance claim generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Id. at 489.  As Vickers concedes that he did not present his ineffective-assistance claim to the state courts, he cannot establish that the procedural default should be excused through cause and prejudice.

Neither can Vickers's miscarriage-of-justice assertion excuse the procedural default.   This exception requires a showing of actual innocence.  Sawyer, 505 U.S. at 339.  The evidence here was sufficient to show that Vickers was the shooter and that the elements of capital murder were met.  Again, he cannot prove actual innocence.

As for the contested jury instruction, the district court did acknowledge that it could conceive of situations in which a death sentence imposed pursuant to the conspiracy jury instruction could

13

be constitutionally infirm, but concluded that here "the actual instructions submitted in the case" were appropriate. The court's statement in the abstract about cases dealing with the relevant jury instructions does not establish that Vickers himself could succeed under actual innocence. Vickers has not established that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

## III

## CONCLUSION

For the reasons set forth above, we conclude that Vickers has failed to demonstrate any basis for entitlement to a COA. Consequently, his application must be rejected.

COA DENIED.